UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GABRIEL SHIELDS,

                    Plaintiff,

          v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

CASE NO. C14-0915-RSL-MAT

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY
APPEAL

Plaintiff Gabriel Shields proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REMANDED for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1992.[1]  He completed high school, attending special education classes, and had been attending community college for two years as of March 2012.

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

REPORT AND RECOMMENDATION
PAGE - 1

1    (AR 39-42.)  Although plaintiff previously performed some work activity, it did not rise to the

2    level of substantial gainful activity and constitute "past relevant work."  (AR 32.)

3         Plaintiff protectively filed an application for SSI in September 2010, alleging disability

4    beginning June 23, 1992.  (AR 154.)  His application was denied initially and on reconsideration.

5         On March 14, 2012, ALJ Verrell Dethloff held a hearing, taking testimony from plaintiff,

6    his mother, and medical and vocational experts.  (AR 37-71.)  On March 23, 2012, the ALJ

7    issued a decision finding plaintiff not disabled since the SSI application date.  (AR 21-33.)

8         Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on

9    April 24, 2014 (AR 1-6), making the ALJ's decision the final decision of the Commissioner.

10   Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

12   The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

14        The Commissioner follows a five-step sequential evaluation process for determining

15   whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

16   be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

17   engaged in substantial gainful activity since the application date.  At step two, it must be

18   determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's

19   mixed receptive expressive disorder and phonological disorder severe.  Step three asks whether a

20   claimant's impairments meet or equal a listed impairment.  The ALJ found that plaintiff's

21   impairments did not meet or equal the criteria of a listed impairment.

22        If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

23   residual functional capacity (RFC) and determine at step four whether the claimant has

REPORT AND RECOMMENDATION
PAGE - 2

1  demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to

2  perform a full range of work at all exertional levels, but with the following nonexertional

3  limitations:  he can perform simple, one-to-two step tasks that require only superficial interaction

4  with co-workers, and would benefit from a job that does not change day-to-day.  Plaintiff had no

5  past relevant work to consider at step four.

6      If a claimant demonstrates an inability to perform past relevant work, or has no past

7  relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant

8  retains the capacity to make an adjustment to work that exists in significant levels in the national

9  economy.  With the assistance of a vocational expert, the ALJ found plaintiff capable of

10 performing other jobs, such as work as a photocopy operator, small parts assembler, sandwich

11 board carrier, farm good loader/light loader, and hand packager.

12     This Court's review of the ALJ's decision is limited to whether the decision is in

13 accordance with the law and the findings supported by substantial evidence in the record as a

14 whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

15 than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

16 mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747,

17 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the

18 ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954

19 (9th Cir. 2002).

20     Plaintiff here argues error in the ALJ's consideration of medical opinions and requests

21 remand for further administrative proceedings.  The Commissioner argues the ALJ's decision

22 has the support of substantial evidence and should be affirmed.  The Court, for the reasons set

23 forth below, concludes this case should be remanded for further proceedings.

REPORT AND RECOMMENDATION
PAGE - 3

1

### Medical Opinions

2    Plaintiff argues the ALJ erred in failing to properly consider the opinions of examining

3 physicians Drs. Sierra Swing and James Czysz and medical expert Dr. Kenneth Asher that he

4 was unemployable without special accommodations.  (AR 60, 330, 338.)  Plaintiff maintains the

5 ALJ improperly substituted his layman's opinion over the findings and opinions of these

6 physicians.  (*See* Dkt. 14 at 3 (citing, *inter alia*, *Gonzalez Perez v. Secretary of Health & Human*

7 *Services*, 812 F.2d 747, 749 (1st Cir. 1987) ("The ALJ may not substitute his own layman's

8 opinion for the findings and opinion of a physician[.]"))

9    The Commissioner argues the ALJ properly provided specific and legitimate reasons for

10 rejecting the contradicted opinions of these physicians.  *See Lester v. Chater*,  81 F.3d 821, 830-

11 31 (9th Cir. 1996) (where contradicted, a treating or examining physician's opinion may not be

12 rejected without "'specific and legitimate reasons' supported by substantial evidence in the

13 record for so doing.") (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).   The

14 Commissioner states that examining speech pathologist Carol Nelson, M.S., suggested that,

15 despite his impairments, plaintiff might be able to work in certain jobs, such as work as a lab

16 technician (AR 314-15), and that State agency psychological consultant Diane Fligstein, Ph.D.,

17 found plaintiff would be able to work in unskilled jobs with short, simple instructions that do not

18 require frequent communications (AR 84-88).  The Commissioner maintains the ALJ provided

19 specific and legitimate reasons with regard to the vocational conclusions of Drs. Swing, Czysz,

20 and Asher, including the fact that Dr. Swing's cognitive testing and mental status examination

21 showed plaintiff's ability to perform simple one-to-two step tasks (AR 28), that plaintiff reported

22 to Dr. Czysz that he had a small job at Judkins Park, handing out flyers and cleaning up the park

23 (AR 29), that plaintiff's former volunteer supervisor suggested he became used to job tasks that

REPORT AND RECOMMENDATION
PAGE - 4

were specific and well explained (AR 31, 339), and that plaintiff independently used the transit system and was capable of appropriate personal interactions (AR 29-30).

Plaintiff provides very little argument to support a finding of reversible error in this case. (*See* Dkt. 14.)   Nonetheless, the Court finds the arguments offered by the Commissioner unpersuasive, the substantial evidence support for the ALJ's assessment of the medical opinion evidence lacking, and further consideration of the evidence warranted on remand.

It should first be noted that, contrary to the contention of the Commissioner, Nelson did not suggest plaintiff might be able to work in a job such as a lab technician.  Nelson, rather, reflected the fact that plaintiff's Individualized Education Program (IEP) in effect during the 2009 to 2010 school year noted plaintiff "may be able to take classes to become a lab technician."  (AR 314 (also describing the IEP as reflecting, *inter alia*, that plaintiff "has problems organizing his thoughts[,]" and that "his goals were unrealistic."))  (*See also* AR 235 (IEP describes plaintiff's biggest challenge as his "maturity level (he wants to be either a scientist or a professional tennis player) both goals are somewhat unrealistic since he just started playing tennis this year and he has no idea what is involved in being a scientist."; also states: "After graduation he could possibly take some classes in a community college to become a lab technician.  He also tends to be reluctant to ask for help or self-disclose his disability."))

In addition, Dr. Fligstein's opinion was not limited to the conclusion that plaintiff was capable of understanding, remembering, and carrying out short, simple instructions and work-like procedures.  (*See* AR 86-87.)  Dr. Fligstein also opined that plaintiff  "may benefit [from a] more hands-on approach to learning[,]" was "likely to benefit [from] a supervisor who is [cognizant] of [his] auditory processing limitations and willing to provide hands-on learning environment and extra time as needed[,]" while his ability to sustain concentration, persistence,

REPORT AND RECOMMENDATION
PAGE - 5

1   and place is "generally intact once [he] has adequately learned tasks[,]" and that plaintiff "will

2   likely benefit [from] some extra time to tactilely learn tasks, as opposed to verbally receiving

3   instructions[,]" and "should avoid hazardous work settings [due to cognitive] limitations." (AR

4   86-87.)   Yet, while mentioning Dr. Fligstein's opinion as to a more hands-on approach to

5   learning, and that plaintiff would be able to sustain concentration, persistence, and pace once he

6   adequately learned new tasks, the ALJ did not accept or reject those opinions, or any of the other

7   above-described opinions, or include any associated limitations in the RFC.   (AR 30.)   Also,

8   although the ALJ did provide reasons for rejecting Dr. Fligstein's additional opinion as to a

9   limitation on public contact, he appeared to focus on plaintiff's social abilities, while Dr.

10  Fligstein, like Drs. Asher and Swing, focused on plaintiff's communication-related limitations.

11  (*Compare* AR 87 (Dr. Fligstein opined:  "[Claimant] will [function] best in settings away [from

12  the general public due to his Specific Learning Disability].   Aside [from] communication

13  deficits, [his] social [functioning] is otherwise intact and he is able to get along well [with]

14  others.  He will [function] best in jobs that do not require [frequent] communication."), *with* AR

15  29 (ALJ found:   "I do not find persuasive the limitation against public contact, given the

16  claimant's documented activities including school, using public transportation, his past work

17  activity, social activities, and the fact that he has consistently presented as cooperative and

18  appropriate during evaluations."))

19          The ALJ may well have reasons for rejecting the unaddressed portions of Dr. Fligstein's

20  report.  However, the Court is limited to a review of the reasoning proffered by the ALJ.  *Bray v.*

21  *Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court reviews ALJ's decision "based

22  on the reasoning and factual findings offered by the ALJ -- not post hoc rationalizations that

23  attempt to intuit what the adjudicator may have been thinking.")

REPORT AND RECOMMENDATION
PAGE - 6

1    Nor does the Court find it appropriate to draw inferences from the ALJ's decision in this

2    instance.  *See Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our

3    faculties for drawing specific and legitimate inferences from the ALJ's opinion.")  The Court,

4    instead, finds the similarity between the unaddressed or inadequately addressed portions of Dr.

5    Fligstein's report and the opinions of the other physicians of record as to limitations on

6    plaintiff's ability to secure and maintain employment without a job coach or other on-the-job

7    accommodations necessitating further consideration of the evidence by the ALJ.  (*See*, *e.g.*, AR

8    30-31 (rejecting Dr. Asher's opinion that plaintiff "needs training and more than average or

9    normal supervision[,]" "would need a job coach or other accommodations[,]" and "would need a

10   job coach even with simple tasks because the claimant has had difficulty assessing his strengths

11   and weaknesses and finding appropriate jobs, and with his language difficulty, a coach would

12   guide him toward appropriate things to do and help him apply and prepare for those positions.";

13   rejecting Dr. Swing's opinion that, if plaintiff "was able to continue speech therapy and receive

14   accommodations in work or at school, by learning and communicating visually instead of

15   verbally, he may be able to function adequately enough to be employed in the future in a setting

16   with close supervision, accommodations for his delays in processing, and limited public contacts

17   where he could become overwhelmed in communicating effectively with others."))

18   The Court also finds notable the ALJ's rejection of medical opinion evidence as to

19   plaintiff's need for a job coach or other accommodations based on his past work experience at

20   the Pacific Science Center.  (*See* AR 30 ("He has worked in the past without a job coach, and the

21   record indicates that he would be able to do so again. While he had difficulty in his Pacific

22   Science Center job in some capacity, once he had learned office tasks he performed them

23   well."))  That is, if considered in a similar fashion on remand, the ALJ should address whether

REPORT AND RECOMMENDATION
PAGE - 7

1 the evidence shows that work was performed in a structured setting, with accommodations. (*See*

2 AR 339 (letter from Pacific Science Center indicates they suspected at the onset of plaintiff's

3 participation in a youth development program for high school students that his learning

4 disabilities would affect his work and thereafter found it "necessary to make accommodations"

5 for him, that he required "a fair amount of training and supervision" at the beginning, while he

6 later became very efficient in doing his work accurately and independently, that the "staff

7 worked to create a routine" for plaintiff "which allowed him to be more successful[,]" and that

8 plaintiff "needed more supervision, more clearly defined tasks, and more time to perform those

9 tasks."))

10      The Court, in sum, finds the ALJ's consideration of the medical opinions of record

11 inadequate.   The ALJ should, therefore, further consider those opinions, and any additional

12 medical evidence as may be needed, on remand.

13                                  **CONCLUSION**

14      For the reasons set forth above, this matter should be REMANDED for further

15 administrative proceedings.

16                              **DEADLINE FOR OBJECTIONS**

17      Objections to this Report and Recommendation, if any, should be filed with the Clerk and

18 served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

19 Recommendation is signed.   Failure to file objections within the specified time may affect your

20 right to appeal.   Objections should be noted for consideration on the District Judge's motions

21 calendar for the third Friday after they are filed.   Responses to objections may be filed within

22 **fourteen (14) days** after service of objections.   If no timely objections are filed, the matter will

23 / / /

REPORT AND RECOMMENDATION
PAGE - 8

1  be ready for consideration by the District Judge on **April 3, 2015**.

2          DATED this <u>19th</u> day of March, 2015.

3

4          _____
           Mary Alice Theiler
5          United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION
PAGE - 9